Edward M. Saltzman, Esq. Corporation Counsel, Port Chester
You have asked what restrictions exist on your village's accepting a proposal by a property owner/builder to build a "village room complex" on his property to be rented to or purchased by the village.
A village has the power to purchase or lease such real property "as the purposes of the corporation may require" (Village Law, § 1-102
[1]). The only restrictions on the exercise of this power are that there is a justifiable public purpose for the property acquired or leased and that the cost involved is not so great as to be a waste of public funds. We assume that a "village room complex" is justified and that any agreement to purchase or lease would be at a negotiated fair price.
The only other restrictions that might be applicable are section101 of the General Municipal Law, which requires separate bids for the plumbing, electrical and heating and ventilating portions of the construction of a public work, and section 103 of that law, which requires competitive bidding. The question is whether what is commonly known as a "turnkey project" is subject to sections 101 and 103. In a turnkey project, the purchaser decides what he wants as an end product and leaves design and construction details up to the person who has the turnkey contract.
There are conflicting cases on the subject of turnkey housing projects. In Matter of North Country Development Corp. v Massena HousingAuthority, 65 Misc.2d 105 (Sup Ct, St. Lawrence Co, 1970), the Court held that the Public Housing Law equivalent of section 101 required separate bids where the housing authority owned the land on which the apartments were to be built. In Matter of Marino v Town of Ramapo, 68 Misc.2d 44
(Sup Ct, Rockland Co, 1971), the Court held that separate bids were not required where the agreement was to purchase a turnkey project constructed on land owned by the developer of the project. The Court inMarino distinguished Massena on the basis of ownership of the land. InMassena, the housing authority was contracting for a public work; inMarino, the housing authority was "buying" a housing project consisting of land and buildings.
The Court in Marino also held that the Public Housing Law equivalent of section 103 was not applicable to the turnkey project. The housing authority had asked for proposals for a turnkey housing project and had received several proposals that varied in cost, number of units and, obviously, location. In approaching housing needs in this manner, there was no way to follow the normal requirements of bid specifications that enable one to determine the lowest responsible bidder.
The proposal made to your village is a turnkey project. We think that section 101 is not applicable since the village is not constructing a public work. Nor do we see how the village could effectively seek proposals for the construction of a village room complex on privately owned land. We assume that a key aspect of the proposal is its location. If, as we assume is the case, the proposal is unique and particularly attractive in meeting village needs, we do not find that section 103 bars acceptance of the offer.
We suggest, however, that any agreement between the village and the property owner/builder be aleatory in nature. That is, the agreement should provide that if the complex is constructed as described, the village will purchase or lease it, as the case may be, upon completion. Thus, the village would not be ordering the construction of a public work; the village would simply be assuring the property owner that if he proceeded, the village would take the complex when completed.
We conclude that a village may agree with a property owner/builder that it will purchase or lease a village room complex if the builder constructs the complex on his property.